STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v.
ROBERT R. DALY, DEFENDANT-APPELLANT.

Argued June 11, 1962—Decided June 29, 1962.

*Mr. Arthur S. Meredith,* County Prosecutor in and for the County of Somerset, argued the cause for plaintiff-respondent (*Mr. Michael R. Imbriani,* Assistant County Prosecutor, on the brief).

*Mr. Robert R. Daly,* defendant-appellant, argued the cause *pro se* (*Mr. Sam Weiss,* on the brief).

The opinion of the court was delivered by

FRANCIS, J.   Defendant, Robert R. Daly, a member of the bar of this State, was convicted of embezzlement in the Somerset County Court following a non-jury trial. We certified for determination in this court his ensuing appeal to the Appellate Division.

The indictment charged that "on the 21st day of December, 1959 and on divers days and dates subsequent thereto, * * * [Daly] being the agent and bailee of Komline-Sanderson Engineering Corp., a corporation of the State of New Jersey, unlawfully did embezzle * * * and appropriate to his own use money to the amount of $20,000 belonging to the said Komline-Sanderson Engineering Corp., * * * with intent to defraud said corporation thereof, contrary to the provisions of *N. J. S.* 2A:102–5, * * *."

The proof showed that for some time prior to December 21, 1959, Daly had acted as attorney for Komline-Sanderson and on that date was handling certain unfinished

matters for it. On December 21, 1959 Daly came to the office of Komline-Sanderson at Peapack-Gladstone, New Jersey, and conferred there with Thomas R. Komline, President of the company. The purpose of the meeting, according to Komline, was to complete the final details respecting the proposed purchase of certain property, in which Daly was to act for the company. At that time, Komline delivered a Komline-Sanderson check for $20,000 drawn to the order of "Mr. Robert R. Daly, Attorney," which he asserts and Daly denies was to be used to buy the property. On receiving the check, Daly immediately prepared, signed and gave to Komline the following receipt:

"Komline-Sanderson Engineering Corporation,
Peapack, N. J.

This will acknowledge receipt of $20,000 to be used by me as your attorney to purchase in your name the real estate in Peapack, N. J., known as the station area including the station building and the dwelling thereon.

I shall deliver to you on or before April 15, 1960, a deed to said premises free and clear of all encumbrance approved both by the Board of Public Utility Commissioners and the Small Business Administration.

If the acquisition is to cost more than $20,000, I shall notify you in writing of the price and you shall have ten days in which to agree to the higher price.

I shall deliver the deed on or before April 15, 1960, and if I am unsuccessful in acquiring the property by that date I will return the $20,000 forthwith.

Dated December 21, 1959.

Robert R. Daly."

Three days before receiving the $20,000 Komline-Sanderson check, Daly had drawn a check for $14,000 to the order of Crawford Manufacturing Company on the Robert R. Daly, Special Account, in the National Newark and Essex Banking Company in Newark, New Jersey. At that time his balance there was $59.29. On leaving the Komline-Sanderson office, Daly went to its bank, had the $20,000 check certified and immediately deposited it in his "Special Account" in Newark.

On the same day, Daly wrote a check on that account for $1,000 to Fidelity Union Trust Co., which was certified; two days later he drew another for $1,000 to himself. The following day, December 22, the $14,000 check cleared through the account. Obviously, if the $20,000 deposit had not been made, these three checks would not have been honored. What happened to the balance of $4,000 was not shown.

In January 1960 Komline learned there was no need for haste in seeking the railroad property. So he telephoned Daly and requested the return of the $20,000, saying that when the negotiations were complete, proper arrangements would be made for deposit money or for actual closing of the transaction. Daly said he would come to the plant in a few days. During February he came to see Komline. The date of the visit is in dispute, Daly fixing it as February 3; Komline as February 23. At that conference, according to Komline, Daly said he had invested the money and would return it by April 15. He declined to specify the nature of the investment. Komline testified that after some talk about criminal action, the meeting terminated rather abruptly when he agreed to think the matter over and let Daly know what course of action would be taken. Thereafter he decided, in order to avoid publicity, to take no action until April 15. Around the 15th or shortly thereafter, when the money had not been returned, he told Daly the company's fiscal year ended April 30 and that the matter had to be cleaned up. Daly promised to come to the plant or to send a check. The promise not having been kept, another telephone call was made by Komline and Daly agreed to send the check. Komline's testimony is that down to this time Daly had not questioned the fact of his default in any way.

On Saturday, April 30, a letter from Daly, dated April 29, was received by the chief accountant of Komline-Sanderson. Attached to it was a check for $20,000 drawn on Daly's special account. The letter said, however, that the check

was to be held until after a meeting scheduled for the following Tuesday when Daly and Komline would evaluate Daly's legal services to date and estimate the value of those services for the future. Since this qualification on delivery of the check was not in accord with their telephone conversation, Komline ordered the check deposited. The deposit was made on Monday but the check was returned for insufficient funds on May 6, 1960. The balance in Daly's special account on that date was $1.40. Komline then demanded that Daly come to the office and "clean the matter up." Daly appeared on May 11 and said he would return the $20,000 when his fees were paid. A list of fees owing was then prepared. Komline and the executive vice-president of the company rejected it as excessive. Some time thereafter the embezzlement complaint was filed.

Daly's defense to the indictment took the following course. He testified that prior to December 21, 1959, he and Komline had been discussing matters in which he was representing the company and certain other projects which he was to pursue in the future. They agreed to meet and did meet on December 21 to reduce their understandings to writing. One such matter was the acquisition of the railroad property which Daly was to undertake for the company. Daly admits that on that day Komline had the accounting department prepare the check for $20,000 to Daly's order. Thereupon, the paper set forth above, acknowledging receipt thereof to be used "as your attorney to purchase in your name" the railroad property and to return the money "forthwith" if the mission was not accomplished, was prepared by Daly in his own handwriting and handed to Komline. But in spite of the clear language employed by him in its preparation, he maintained at the trial that the $20,000 was not given to him for that purpose at all. It was given to him to be used as his own for any purpose "that [he] saw fit"; to be "disbursed as [his] own money as [he] saw fit from time to time." He said further the agreement was that from time to time

thereafter he and Komline were to agree on the fees earned by him and such fees would be charged to the $20,000. In explanation of the explicit receipt prepared and signed by him, he said it was done at Komline's request merely to have some kind of a record for the accounting department. Komline emphatically denied that assertion and said the money was given for the precise purpose referred to in the receipt, and for no other purpose.

The principal issue at the trial, therefore, was whether Daly received the $20,000 as trust money to be used for the specified purpose and returned if not so used, or whether it was simply given to him to be used as his own money in any way he saw fit, and later charged against his fees as they were earned or became due, and were agreed upon. Resolution thereof depended largely upon the view the trial court took of the credibility of Komline and Daly. He concluded that Komline's testimony, supported clearly by the receipt prepared and executed by Daly, was sufficiently worthy of belief to warrant its acceptance. Thus, he decided that the $20,000 was given to Daly as trust money to be devoted to a special purpose or returned. Among other things, the court said:

> "It just is inconceivable to me that he would make out this receipt, in more or less detailed form, telling exactly what was to be done with this $20,000 if in fact this money was given to him for his own use to be used by him as he saw fit, to be disbursed as his own, to be used as his own money * * * or that it was paid to him on account of services rendered and to be rendered. * * * * * * * *
>
> The explanation which Mr. Daly gives as to the fact that it was just something to keep in the records of the engineering company for accounting purposes just does not make sense, because there would have been no point in making this receipt one, two, three, four paragraphs. If it merely was to acknowledge receipt of the sum of $20,000 for his own use, he could say so, or in payment of a bill for fees, expenses, and disbursements. That would be it. There would be no point to the rest of it."

Our own examination of the record has satisfied us that the evidence is ample to sustain that finding.

■ When Daly had the $20,000 check certified and deposited in his account, there can be no doubt that he did so in order to meet the outstanding $14,000 check which had been issued for a purpose of his own, foreign to the purchase of the property for Komline-Sanderson. And when $14,000 was paid on December 22, 1959, the trial court was justified in finding an intentional, fraudulent diversion and appropriation of trust money to his personal use. Such conduct constituted embezzlement. *State v. Bobbins,* 35 *N. J. Super.* 494 (*App. Div.* 1955), affirmed 21 *N. J.* 338 (1956), appeal dismissed 352 *U. S.* 920, 77 *S. Ct.* 220, 1 *L. Ed. 2d* 157; *State v. Carr,* 118 *N. J. L.* 233 (*E. & A.* 1937); *State v. Geyer,* 81 *N. J. L.* 591 (*E. & A.* 1911); 2 *Wharton, Criminal Law and Procedure* (1957), § 513. The same may be said for the two $1,000 checks which he drew on the account. In view of the trial court's finding which, as we have said, was adequately supported, it is plain that such use of the fund was not pursuant to any claim of right or interest therein or pursuant to any claim of attorney's lien. The evidence completely negatives any suggestion that the misappropriation was made pursuant to the good faith assertion of a lien claim.

■ The charge is made that the indictment is defective because it alleges that Daly, being "the agent and bailee" of Komline-Sanderson Engineering Corp., embezzled the money. The argument is that in law the status of an agent is different from that of a bailee, and therefore embezzlement by an agent and embezzlement by a bailee are different crimes. Consequently, the indictment must fall because it charges two distinct crimes against the defendant in one count. The contention is hypercritical and without merit. Assuming the words ordinarily imply different legal relationships, obviously in the context of this indictment if one is regarded as technically inapplicable it may be considered surplusage. Daly clearly was an agent; "bailee" may be ignored. Further, use of the two descriptions may

be treated as simply redundant, for, as Wharton points out, "the word 'agent' is sometimes broadly interpreted to include persons such as bailees, brokers, attorneys and public officers." § 527, *supra*. And, as Justice Heher said in *State v. Carr, supra*, cited by defendant:

"It is the general rule that an attorney who collects money for his client, and converts it to his own use, is guilty of embezzlement, either under a statute applying to attorneys in express terms, or by virtue of one punishing, generally, persons who appropriate to their own use property entrusted to them, or one denouncing embezzlement by bailees." 118 *N. J. L.*, at *p.* 237.

It may be noted also that an indictment charging embezzlement by a person as a bailee was held sufficient under a statute condemning embezzlement by an "agent." The court declared the word "bailee" synonymous with "agent" for the purpose of the indictment, "a bailee being a species of agent." *People v. Riccardi,* 50 *Cal. App.* 427, 195 *P.* 448 (*D. Ct. App.* 1920). See also, *State v. Barr,* 61 *N. J. L.* 131 (*Sup. Ct.* 1897); *Wynegar v. State,* 157 *Ind.* 577, 62 *N. E.* 38 (*Sup. Ct.* 1901).

The evidence being sufficient to warrant the trial court in adjudging defendant guilty beyond a reasonable doubt, and no meritorious ground for reversal appearing, the conviction is affirmed.

*For affirmance*—Chief Justice WEINTRAUB, and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN—7.

*For reversal*—None.